ANNIE OVINGTON *vs.* LOWELL AND SUBURBAN STREET RAILWAY COMPANY.

Middlesex.    January 18, 1895. — May 21, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Negligence — Municipal Ordinance — Evidence.*

A street railway company which, after a storm, is engaged in removing snow from its tracks in a city street, using therefor, by permission of the superintendent of streets, snow ploughs which heap the snow at the side of the tracks, is not liable, in the absence of evidence that the work was done negligently, or by improper methods, or that the snow was unnecessarily piled up in the street and not seasonably removed, for injuries occasioned to a traveller on the sidewalk who was struck by a horse belonging to a third person, which, on entering the street where the tracks were from a side street, ran into the pile of snow, tipped over the sleigh to which it was attached, escaped from the control of the driver, and ran away.

The Lowell Horse Railroad Company, which, under an ordinance of the city of Lowell, was forbidden under certain conditions to use snow ploughs on its tracks in that city, or to remove snow therefrom, without consent first being obtained of the mayor, or of the superintendent or chairman of the committee on streets, and the Lowell and Dracut Street Railway Company, having under the provisions of St. 1890, c. 163, been consolidated into the Lowell and Suburban Street Railway Company, the consolidated company, though subject, under the operation of the statute, to the provisions of the ordinance, may, with the consent of the superintendent of streets, lawfully remove snow from its tracks in Lowell by means of ploughs or otherwise.

Parol evidence of an agreement between the manager of a street railway company
and the superintendent of streets of a city, permitting the company to remove
snow from the streets with snow ploughs, is competent, where it appears that the
written agreement has been mislaid and cannot be produced.

TORT, for personal injuries occasioned to the plaintiff, a trav-
eller on the highway by being struck by a runaway horse which
escaped from its driver through the alleged negligence of the
defendant.

Trial in the Superior Court before *Sheldon,* J., who directed
a verdict for the defendant; and the plaintiff alleged exceptions.
The material facts appear in the opinion.

The case was argued at the bar in January, 1895, and after-
wards was submitted on the briefs to all the judges.

*P. J. Hoar,* for the plaintiff.

*F. E. Dunbar,* for the defendant.

BARKER, J.   The plaintiff was not a passenger, and was not
injured by any vehicle or animal owned by the defendant or
under its control, nor upon its tracks, but was struck while upon
the sidewalk by a runaway horse and sleigh belonging to a third
person, and of which no one was in control at the time.   The
contention that the defendant is answerable for the plaintiff's
injury is upon the ground that the horse escaped from the
control of its driver because of unlawful or negligent acts of
the defendant.   We assume that, if there was evidence from
which the jury might have found that the horse so escaped,
they could render a verdict for the plaintiff, if they thought
her in the exercise of due care.   See *McDonald* v. *Snelling,* 14
Allen, 290.   But we think a verdict was rightly ordered for
the defendant, for the reason that the jury could not properly
find from the evidence that the horse escaped from control by
any fault of the defendant.

The injury was on February 23, 1893.   A great snow storm
had prevailed on the day before, and on that day it snowed very
hard, making the snow about two feet deep on a level.   The de-
fendant's tracks were in Lakeview Avenue, into which Aiken
Street enters at right angles.   The only witness who described
the escape of the horse, testified that she saw a horse and sleigh
coming pretty fast around the corner of Aiken Street and Lake-
view Avenue, driven into the snow-pile at that place, and the

driver trying to do all he could to hold the horse, but being un-successful; that the sleigh finally tipped over and the men were thrown out in the snow, and the horse with the sleigh, which by this time was bottom up, ran on to the sidewalk, and, run-ning away and going very rapidly, struck the plaintiff. The same witness and other witnesses testified that during the storm and on the day of the accident the defendant had men and teams and electric and horse ploughs working all the time on Lake-view Avenue and at the place of the accident; that they threw and piled up snow all this time on both sides of the track in the part of Lakeview Avenue where the sidewalk on to which the horse ran was located; and that they were carting away snow, and that on the day of the accident the snow was about as high as her head, she being more than five feet high. The general manager of the defendant testified that at the time of the accident the defendant had not cleared out Aiken Street, nor Lilly Avenue, which entered Lakeview Avenue opposite Aiken Street; that the storm was the worst since the blizzard of 1888; and that south of the south rail of the north track the snow in Lakeview Avenue was undisturbed by the defendant, the distance from that rail to the south curbing being nineteen feet. The same witness testified, in substance, that the defend-ant had an agreement with the city, made by the witness and the superintendent of streets, as to the removal of snow from the tracks of the defendant for that season, and that the defend-ant was permitted to use either horse or electric ploughs, and to take off snow as soon as practicable, the city to dispose of the snow on certain streets.

This is the substance of all the testimony as to the condition of the street, the acts of the defendant in interfering with the snow, and the circumstances under which the runaway horse got free from its driver and ran upon the sidewalk. At the argument in this court, the plaintiff's counsel relied upon c. 24 of the Ordinances of the City of Lowell of 1883, making regu-lations to be observed by the Lowell Horse Railroad Company, which provides that, when snow falls of a sufficient depth for sleighing, no snow plough shall be allowed to pass over the track of said company, or any part thereof; and that the company shall not at any time cause or allow snow or ice to be removed

from their tracks, or any part thereof, without consent being first obtained of the mayor, or of the superintendent or the chairman of the committee on streets.

We assume that the Lowell Horse Railroad Company was the corporation chartered by St. 1863, c. 172, and concerning which were passed the Sts. 1864, c. 261 ; 1873, c. 171 ; 1875, c. 147 ; and 1887, c. 182 ; and that under the provisions of St. 1890, c. 163, it has been consolidated with the Lowell and Dracut Street Railway Company into the corporation which is the defendant in this case ; and that under the operation of the statute last cited the defendant is subject to the provisions of the city ordinances referred to. We do not construe that ordinance wholly to prohibit the use of snow ploughs by the company, and we are of opinion that under its provisions the defendant, with the consent of the superintendent of streets given in the agreement which was in evidence, could lawfully remove the snow from Lakeview Avenue by means of ploughs and otherwise.  It is perhaps questionable whether, upon the evidence, the horse was rendered uncontrollable by coming into the pile of snow at the corner of the street, but we assume that the jury could so find. Assuming that they could also find that the pile of snow was due to the operations of the ·defendant in clearing snow from the street, we are of opinion that, having reference to the magnitude of the storm, the evidence does not justify a finding that the inequality of surface which caused the overturn of the sleigh, was due to the negligence of the defendant.  The storm was protracted and severe, and the depth of snow unusually great.  The operation of removing the snow necessarily took considerable time and caused inequalities in height during the process.  The work of removal could not be so done as to avoid such inequalities.  The storm had continued until an earlier hour of the same day, and the work of removal was still in progress when the accident occurred.  There was no evidence that the corporation pursued the work recklessly, or by improper methods.  The work was going on all the time, and was prosecuted with all ordinary means ; and as the work itself was lawful, it was incumbent upon the plaintiff to prove that it was negligently performed.  That during the process of removal piles of snow were heaped up in the street is all that the evidence discloses

tending to show that the work was negligently done. This without evidence that the heaping up of the snow was unnecessary, or that the work could have been done in some other manner, was not enough to charge the defendant with negligence. If the heaps were not removed within a reasonable time, the burden of showing that fact was upon the plaintiff, and it could not be properly found from the evidence.

Parol evidence of the agreement with the superintendent of streets as to the use of snow ploughs and the removal of snow was competent. There is no reason shown why such an agreement should be in writing, and there was evidence, the effect of which was for the court, tending to show that so much of the agreement as had been put into writing had been mislaid and could not be produced.          *Exceptions overruled.*